UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANETTA LYNN LEIVA, | CV F 04-6669 AWI WMW HC |
| Petitioner, | MEMORANDUM OPINION AND ORDER RE PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| JEANNE S. WOODFORD, | |
| Respondent. | |

Petitioner is a prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. Section 2254. Pursuant to Title 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge.

**PROCEDURAL HISTORY**

On March 17, 1995, a jury convicted Petitioner of first degree murder pursuant to Penal Code Section 187. The trial court sentenced Petitioner to serve a term of imprisonment of 25 years to life.

Petitioner appealed her conviction to the California Court of Appeal, Fifth Appellate District ("Court of Appeal"). The Court of Appeal affirmed the judgment in an unpublished opinion issued

1

1  March 6, 2006.  Petitioner filed a petition for review, which the California Supreme Court denied on
2  April 16, 1997.
3       On October 19, 1999, Petitioner filed a petition for writ of habeas corpus in Kern County
4  Superior Court.  The court denied the petition on October 27, 1999.
5       Petitioner filed the present petition on December 8, 2004.   Respondent contends that
6  Petitioner's claims are barred by the statute of limitations.  Petitioner contends that she is entitled to
7  equitable tolling based on mental health issues.  On September 5, 2006, Respondent requested this
8  court to decide Petitioner's claims on the merits, without addressing the issue of equitable tolling.
9  Respondent noted that the issue of mental competency is a relatively complex issue which would
10 require lengthy litigation, and thus asked the court to proceed on the merits.  Respondent expressly
11 does not waive the issue of equitable tolling and preserves the right to litigate this defense at a later
12 date if necessary.

**FACTUAL BACKGROUND**

The Court of Appeal's opinion contained the following factual findings:

> While the defendant's case was still at the preliminary hearing stage, defense counsel requested a competency evaluation of defendant . . . .  Dr. Estner evaluated defendant in November 1994 and reported to the superior court that defendant was competent to stand trial and cooperate with counsel . . .
>
> [U]pon arraignment in the superior court, defendant entered her pleas of not guilty and not guilty by reason of insanity.  The superior court then appointed two mental health experts to examine defendant . . . .  the two experts reached opposite conclusions about the defendant's sanity at the time she committed the murder.  As a consequence, the prosecutor requested that the court appoint another expert to examine defendant to determine her mental status.
>
> In particular, the [prosecutor] asked the court to appoint Dr. Estner, reasoning it would take less time and thus cost less for him to complete . . . . examination because he was already familiar with the case.  Over defendant's objection, the trial court granted the prosecution's request and appointed Dr. Estner.
>
> On her attorney's advice, defendant refused to cooperate with Dr. Estner.  The psychiatrist nevertheless reached an opinion that defendant was sane at the time she committed the offense.  He relied upon his review of police reports, reports of the other mental health experts, audio cassette tapes of interviews of defendant and others, and his November 1994 interview of defendant.
>
> Defense counsel made an in limine motion to exclude from the sanity phase any testimony by Dr. Estner concerning Defendant's statements to him during the competency examination, as well as the fruits of such statements   . . . the trial court denied the motion.

In his testimony during the sanity phase of defendant's trial, Dr. Estner identified three statements defendant made to him, namely:

"She said she was carrying the baby and she slipped and fell and the baby struck the ground."

I asked her specifically if she was hearing voices telling her to do this? No." and

She was also hearing some voices at the time, I asked her very specifically if the voices told her to hurt the child. She said that she had told the other examiners the voices liked the child and were protective of the child. She also told me that she couldn't do anything without the devil's permission, and so unless he gave permission, she wouldn't hurt the children.

**LEGAL STANDARD**

JURISDICTION

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 120 S.Ct. 1495, 1504 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. In addition, the conviction challenged arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed on December 8, 2004, after the enactment of the AEDPA, thus it is governed by its provisions.

STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 123 S.Ct. 1166, 1173 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1174 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. Coleman v. Thompson, 501

U.S. 722, 731, 111 S.Ct. 2546, 2554-55 (1991); Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 512 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996). A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888 (1995) (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis). Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim. Duncan, 513 U.S. at 365-66, 115 S.Ct. at 888; Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir.1998). For example, if a petitioner wishes to claim that the trial court violated his due process rights "he must say so, not only in federal court but in state court." Duncan, 513 U.S. at 366, 115 S.Ct. at 888. A general appeal to a constitutional guarantee is insufficient to present the "substance" of such a federal claim to a state court. See, Anderson v. Harless, 459 U.S. 4, 7, 103 S.Ct. 276 (1982) (Exhaustion requirement not satisfied circumstance that the "due process ramifications" of an argument might be "self-evident."); Gray v. Netherland, 518 U.S. 152, 162-63, 116 S.Ct. 1074 (1996) ("a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.").

When, as in this case, the California Supreme Court's opinion is summary in nature, this court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under §

2254(d)(1)).

## DISCUSSION

<u>Admission of Testimony of Dr. Estner</u>

Petitioner contends that the trial court erred in admitting the testimony of Dr. Estner during the sanity phase of trial. Petitioner claims that the admission of this testimony, which relied on her statements made during the competency examination, violated her Fifth Amendment right against self incrimination. She argues that she was never advised that her statements during the competency examination could be used against her if she pleaded not guilty by reason of insanity

In addressing this issue, the Court of Appeal discussed the rule that neither a defendant's statements to a psychiatrist appointed under section 1369 for a competency examination nor the fruits of such statements may be used "in trial of the issue of [an individual's] guilt. <u>See</u> <u>People v. Arcega</u>, 32 Cal.3d 504, 522 (1982); see <u>Tarantino v. Superior Court</u>, 48 Cal.App.3d 465, 470 (1975). Unpublished Court of Appeal Opinion in Case No. F023618, 6. The Court of Appeal held:

> In our estimation, the use immunity rule established in *Tarantino* and approved in *Arcega* does not apply in this case. *Arcega* and *Tarantino* at most prohibit the introduction of section 1368 evidence during the **guilt** and **penalty** phases of trial. (*Arcega, supra*, 32 Cal.3d at p. 522; *Tarantino, supra*, 48 Cal.App.3d at p. 470.) However, the statements defendant made to Dr. Estner during his competency examination were not introduced during the guilt phase or any penalty phase of defendant's trial. Instead, the prosecution offered Dr. Estner's testimony during the **sanity** phase of defendant's trial, after defendant had been found guilty of murder by the jury. Thus, unlike the defendants in *Tarantino* and *Arcega*, the evidence which the jurors relied upon to convict defendant did not include defendant's statements to Dr. Estner.

<u>Id</u>. at 7.

The Court of Appeal rejected Petitioner's claim that this distinction is immaterial and that her statements to Dr. Estner were inadmissible in all phases of her trial. The Court of Appeal held:

> As we said in *Stanfill*, because the rational for excluding such statements is the protection of the defendant's constitutional privilege against self-incrimination the law governing the privilege should be applicable. (*Stanfill, supra*, 184 Cal.App.3d at p. 581.) The law governing the privilege is well-settled that if there is no objection at trial to the admission of statements purportedly obtained in violation of the Fifth Amendment, the objection cannot be raised for the first time on appeal. (*People v. Peters* (1972) 23 Cal.App.3d 522, 530; see also *People v. Arcega, supra*, 32 Cal.3d at p. 524, fn. 8.) Here, if defendant had any such Fifth Amendment privilege, she waived it because she never objected in the trial court to Dr. Estner's testimony on the ground it violated the Fifth Amendment, the *Miranda* rule, or any

other related principle.

Id. at 9.

Finally, the Court of Appeal held that any error that did occur was harmless:

> In any event, even if defendant could establish error of constitutional proportions, we would not find prejudice. Defendant cannot point to any statement made to Dr. Estner relevant to his opinion of her sanity which she did not make to at least one or more of the other mental health experts who examined her to evaluate her sanity at the time of the murder. As Dr. Estner noted, defendant told a "variety of examiners" that she slipped and fell and that the death of her child was the result of an accident. Those examiners included at least two of the mental health experts who testified at trial. These two experts also testified that in their interviews with defendant she said the voices she heard had not told her to hurt the baby and that the voices liked the baby. Consequently, any possible error in admitting Dr. Estner's testimony about defendant's statements was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.)

Id. at 10.

Petitioner now argues that the Court of Appeal's analysis "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," entitling her to habeas corpus relief. Petitioner relies heavily on Estelle v. Smith, 451 U.S. 454 (1981), in which the Supreme Court found that the Fifth Amendment privilege applied where a competency examination was performed and the prosecution used the substance of the defendant's disclosures against him in the penalty phase of a death penalty case. The Supreme Court held that because the defendant had not knowingly and voluntarily consented to the competency examination, i.e., Miranda admonitions had not been given, the prosecution was prohibited from relying on the defendant's statements to make their case. Petitioner now argues that the Fifth Amendment privilege is applicable to the statements she made in the competency examination, and that Constitutional error occurred because she was not advised that her statements could be used against her. This court finds that in so arguing, Petitioner ignores the Court of Appeal's finding that if she had a Fifth Amendment privilege, she waived it because she "never objected in the trial court to Dr. Estner's testimony on the ground it violated the Fifth Amendment, the *Miranda* rule, or any other related principle."

7

1    Further, although Petitioner argues that the Court of Appeal erred in finding harmless error in
2 this case, she does not address the court's finding that she could not identify any statement made to
3 Dr. Estner that she did not make to at least one or more of the other mental health experts who
4 examined her.  In particular, the Court of Appeal notes that two mental health experts testified as to
5 some of the same statements by Petitioner.  Under these circumstances, this court cannot find that the
6 Court of Appeal erred in finding that the admission of Dr. Estner's testimony did not substantially
7 influence the jury's decision.

8    In light of the above, this court must conclude that Petitioner has failed to carry her burden of
9 showing that the Court of Appeal's decision, adopted by the California Supreme Court, resulted in a
10 decision that was contrary to, or involved an unreasonable application of, clearly established Federal
11 law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was
12 based on an unreasonable determination of the facts in light of the evidence presented in the State
13 Court proceeding." 28 U.S.C. § 2254(d).  Accordingly, there is no basis for habeas corpus relief.

14

15   Finally, the court notes that  Petitioner may seek a certificate of appealability.  The controlling
16 statute, 28 U.S.C. § 2253, provides as follows:

17    (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in
18    which the proceeding is held.
     (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a
19    warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention
20    pending removal proceedings.
     (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not
21    be taken to the court of appeals from--
     (A) the final order in a habeas corpus proceeding in which the detention complained of arises
22    out of process issued by a State court;  or
     (B) the final order in a proceeding under section 2255.
23    (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
24    (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).
25
     In the present case, the court finds that Petitioner has failed to carry his burden of making a
26
substantial showing of the denial of a constitutional right.  Accordingly, a certificate of appealability
27
28
                                                     8

1 will be denied.

In light of the foregoing, IT IS HEREBY ORDERED as follows:

1) The petition for writ of habeas corpus is DENIED;

2) The Clerk of the Court is directed to enter judgment for Respondent and to close this case;

3) A certificate of appealability is DENIED.

IT IS SO ORDERED.

**Dated:   November 6, 2007**              /s/  **William M. Wunderlich**
                                           UNITED STATES MAGISTRATE JUDGE

9